See also D.C., 255 F.Supp. 88.

Ralph STELL, by Next Friend, et al.,
Plaintiffs,

v.

**SAVANNAH–CHATHAM COUNTY BOARD OF EDUCATION**
et al., Defendants,

and

Lawrence Roberts  et al., Intervenors.

Civ. A. No. 1316.

United States District Court
S. D. Georgia,
Savannah Division.

Aug. 24, 1965.

**84**

Basil Morris, Savannah, Ga., for defendants-appellants.

B. Clarence Mayfield, E. H. Gadsden, Savannah, Ga., Donald L. Hollowell, Atlanta, Ga., Jack Greenberg, Derrick A. Bell, Jr., New York City, for plaintiffs-appellees.

R. Carter Pittman, Dalton, Ga., J. Walter Cowart, Savannah, Ga., for intervenors-appellees.

### ORDER ON PLAN OF DESEGREGATION SUBMITTED BY DEFENDANTS

SCARLETT, District Judge.

### QUESTIONS FOR DECISION

The above case was tried on its merits and a decision rendered on June 28, 1963. 220 F.Supp. 667. The decision was appealed to the Fifth Circuit Court of Appeals and the following order entered:

"[T]he judgment is reversed and the case remanded for further proceedings not inconsistent herewith" (333 F.2d 55, 66).

In its decision the Court of Appeals ordered that:

"any plan hereafter promulgated must be carefully inquired into by the District Court with close attention being paid to the burden of proof that is on the school board to justify delay." (333 F.2d 55, 64).

As noted by the Court, the defendant School Board had already instituted a plan of integration and no question of delay has arisen.

The issues before the Court on the trial and before the Court on appeal are set out in the cited decisions. The uncontroverted evidence adduced on the trial of the case is in the Transcript of Hearing and is set forth in most essentials in the decision by this Court. In its decision the Court of Appeals pointed out that:

"the only question left * * * concerns the manner in which it [integration] is to be accomplished, and the time allowed for that purpose." (333 F.2d 55, 62)

The decision by this Court was construed by the Court of Appeals as one requiring continued segregation by race and color in the Savannah schools in violation of the equal protection clause of the 14th Amendment, as construed by the Supreme Court in Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873. The Court held further:

"In this connection, it goes without saying that there is no constitutional prohibition against an assignment of individual students to particular schools on a basis of intelligence, achievement or other aptitudes upon a uniformly administered program but race must not be a factor in making the assignments. However, this is a question for educators and not courts." (333 F.2d 55, 61, 62)

Thus, the Court of Appeals necessarily left open for this Court to determine "the manner in which it [integration] is to be accomplished". If it may be accomplished by the "assignment of individual students to particular schools on the basis of intelligence, achievement or other aptitudes upon a uniformly administered program" without race being a factor in the making of the assignments, such assignments may be made and, under the evidence in this case, should be made. Such assignments will consist with the Constitution, the *Brown* case and the decision of the Court of Appeals in this case.

The Court takes judicial notice of the fact that in all well regulated school systems at all times school children in general and regardless of race are permitted to progress on a basis of intelligence, ability, achievement or other aptitudes. In no case called to the Court's attention has it been held that

there is any constitutional requirement that children differing in ages and qualifications be educated together. In *Brown* it was held that only school children of "similar age" and the "same educational qualifications" are entitled to be classed together in schools under the equal protection clause of the 14th Amendment.

Where facts are fully developed and the evidence is undisputed or without material conflict, a final judgment may be rendered or directed by the reviewing court. (5B C.J.S. Appeal and Error § 1925, p. 425). Instead of directing this Court as to what judgment should be rendered or as to "the manner in which integration should be accomplished", as the Court of Appeals had previously done in Stell v. Savannah-Chatham County Board of Education, 5 Cir., 318 F.2d 425, before hearing any evidence, the Court of Appeals, after seeing a Transcript of the evidence, remanded the case to this Court for a determination of the manner in which integration should be accomplished. In order to reach an intelligent and upright decision as to "the manner in which integration is to be accomplished", without regard to race, this Court must base that decision on law and the evidence adduced upon the trial. The evidence adduced at the trial on the merits in this case serving as guide lines for such purpose was undisputed, credible and convincing, was adopted by the defendants and was not questioned either by the plaintiff or the Circuit Court.

### THE MANNER IN WHICH INTEGRATION IS TO BE ACCOMPLISHED

The Intervenors alleged the following in paragraph 5(a) of their plea in this case:

"(a) Existing ethnic group differences in educational achievement and psychometric intelligence are of such a magnitude that extensive * racial integration will seriously impair the academic standards and educational opportunities for the petitioners and other White children of Savannah-Chatham County. The mean mental age of White school children in Savannah-Chatham County ranges from two to four school years ahead of the mean mental age of Negro school children in Savannah-Chatham County. If the Negro and White children are educated in the same schools and in the same rooms with the same teachers and all are grouped on the basis of academic achievement the White students will average from two to four years younger in chronological age than the Negro students. On the other hand if such children are grouped on the basis of chronological age, existing academic standards in the now all-White schools cannot be maintained and the system of education for the White children will be virtually destroyed, without any corresponding benefit to the academic progress of the Negro students."

\* The word "extensive" or major was arbitrarily defined in paragraph 9 as "around 20% of the school population".

The testimony of Dr. R. T. Osborne of the University of Georgia, based on the testing of a large representative sample of negro and white students in Savannah over a six year period, referred to in 220 F.Supp. 667, and more fully set forth in a monogram introduced in evidence as an appendix in this case, entitled "Racial Difference in School Achievement", established:

"On group achievement tests designed to evaluate the degree of success in learning the basic subjects taught in public schools the American Negro with rare exception is unable to keep pace with established grade norms. In most subjects the average Negro child falls behind the norm group at the rate of almost one-third of a grade per year, until by the time he graduates from high school he is in some areas four full years below the twelfth grade standard." (Appendix, p. 3)

It was revealed with respect to Savannah pupils: (p. 8)

"Growth patterns of mental ability grade placement for the two groups are seen in Figure 3. The difference

in mental maturity of over two years at the sixth grade (1954) was slightly attenuated at the eighth grade testing (1956), but by the second semester of the tenth grade (1958) the means of the two groups are separated by over three years. The same relative position of the two curves was maintained through the last testing period of the experiment, twelfth grade (1960). By the time the students were examined at the tenth grade there was practically no overlap in I.Q.; that is, only one tenth grade child in the white group earned an I.Q. below the median I.Q. of the Negro children in the same grade. At the tenth grade only one per cent of the Negro pupils equalled or exceeded the median I.Q. of the whites (Table I)." (Appendix, p. 8)

In summarizing his results of the studies of the Savannah schools, Dr. Osborne dealt with the specific question that now concerns this Court. He said:

"If public schools are ordered to integrate *en masse* there appear to be three possible courses of action:

1. Lower the educational standards and level of instruction in the white schools to the present passing level in the Negro schools. The net result of this would be to maintain for Negro pupils standards now existing in their schools, but lower expectations for the white children two to four years below their present grade norm. If this plan were adopted, there would be few if any failures or repeaters among the white children because they would almost never do so poorly as to fail by present Negro standards. It goes without saying that no reasonable citizen would sanction such a plan to lower our educational standards at a time when there is a world-wide attempt to strengthen teaching and up-grade education at all levels.

2. Raise educational standards required of the Negro child to those required of white children and maintain the present level of instruction and rate of failures. This alternative would result in a 40 to 60 per cent Negro failure rate in intermediate grades. At the high school level where achievement differences are of the magnitude of three to four years, failure rate for the Negro student would be 80 to 90 per cent with larger and larger numbers of Negro children piling up in the lower grades.

3. The final alternative would be to maintain the two existing levels of instruction and to apply differential marking and evaluation systems to the two groups. This alternative would result in *de facto* segregation because for teaching efficiency learners within each school are grouped according to achievement and learning ability.

"None of the proposed alternatives represents a real solution to the problem and each would result in educational chaos and confusion and bring about an over-all weakening of the educational system. The school administrator who has the responsibility of providing meaningful educational experiences for all children must have an instructional program that will provide realistic educational goals for all boys and girls regardless of race.

"In regions of the United States where the Negro population is relatively small there may be no problem of balancing the schools in terms of race. However, in the South-eastern United States where upwards of 30 per cent of the population is Negro, racial differences in school achievement can no longer be ignored. Attempts to explain the reasons for the differences on the basis of environmental or genetic conditioning will not solve the problem. Regardless of etiology, racial differences in school achievement do exist and must be reckoned with." (Appendix, pp. 17, 18.)

Since the original *Brown* case, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, held that only children of "similar age" and

the "same educational qualifications" are entitled to be classed together in schools under the equal protection clause of the 14th Amendment, this Court was free to find and did find upon the unchallenged and unquestioned evidence that in order for school children to be effectively educated in Savannah-Chatham County they must be separated and classified as to age and educational qualifications. Facts thus established are final and are not subject to reversal. It is the law of this case and the law of the land that separation may not be accomplished by using race and color as sorting criteria, but the law leaves school authorities free to educate school children efficiently without regard to race or color.

In addition to the evidence in the record on appeal, a piece of newly discovered evidence was introduced before the Court at the hearing. It is a published study entitled "PROJECT TALENT" (1963), which is an official report of a research study based on conditions found in 773 public senior high schools in all sections of the United States. It was made as a part of a Research Program conducted by the University of Pittsburgh and financed by and conducted in behalf of the Office of Education, U. S. Department of Health, Education and Welfare, (the agency now charged by law with enforcement of the desegregation provisions of the Civil Rights Act of 1964). It reports that the indiscriminate integration of school children by race without regard to diversities of ages and mental qualifications tends to deprive fast learners of opportunities for advancement and to decrease the mean scores of all school children while increasing drop-out rates of slow learners and decreasing chances of college entry by average learners, regardless of the environment of such children. (Project Talent (1963) pp. 4–6)

No effort was made by the plaintiff or the defendant to refute or disparage this additional evidence. Indeed, the plaintiff in this case has not at any time assumed any position contrary to the findings of this Court from the evidence and from the findings made at the behest of the United States Department of Health, Education and Welfare. The stipulation made by Mrs. Motley during the trial of this case and while Dr. Henry E. Garrett, formerly of Columbia University and now of the University of Virginia, was on the stand, has never been withdrawn and must be accepted as true, to-wit:

"negroes, generally, on achievement tests, do not perform as well as whites * * * we will stipulate that. He doesn't have to testify to it. We will agree to that.

"The Court: Agree to what?

"Mrs. Motley: That these tests, which have been administered, show that negroes, generally, do not perform on the achievement tests as well as whites. Now, if that is all he is going to show, we will stipulate that, because the other witness [Dr. Osborne] has already said that." (Transcript of Proceedings, p. 134)

In the plan filed by the defendant School Board now before the Court for consideration, there is no indication that integration is to be accomplished in any other manner than congregating children because of race and color. In fact, the plan takes no account of age and qualifications and the permissible criteria for classification, other than race or color, pointed out by the Fifth Circuit Court of Appeals. To do so, it is urged by counsel for defendant in support of the plan tendered,

"would tend to develop 'superiority complexes' among those of high intelligence and aptitudes, and 'inferiority complexes' among those of lower intelligence and aptitudes who would be placed in what could well be regarded as 'schools for the dumb' or 'schools for the retarded'; such encouragement in a public school system operated in a democracy would be unthinkable".

Such a contention is itself "unthinkable". To restrain bright children in order to keep "dumb" children from experiencing the urge that goes with an

"inferiority complex" would subvert and nullify the educational process. Excellence is not to be penalized in order to exalt mediocrity.

It requires no considerable amount of intelligence for anyone to discover that a six or a sixteen year old child is not mature enough to change the culture and improve the weaknesses of another individual or race. The advancement of one should not be retarded on the theory that by doing so those dissimilar in age and qualifications will profit by such repression of talent.

It is ordered that the plan filed by defendants be and the same is disapproved and disallowed and defendants are hereby ordered promptly to prepare and submit a plant of desegregation not inconsistent with but which will accord with (1) the unquestioned and undisputed facts adduced at the trial and subsequent hearing of this case; (2) the decision of the Fifth Circuit Court of Appeals; and (3) the decision of the Supreme Court in *Brown*, to the end that race or color will not be factors. The plan should assure that integration may be accomplished in such a manner as to provide the best possible education for all school children with the greatest benefits to all school children without regard to race or color, but with regard to similarity of ages and qualifications.

### SCHOOL TEACHERS

The plaintiffs prayed in their petition for integration of teachers but stated at the last hearing that they would not now insist upon it. Intervenors stated that they would insist upon white teachers being no longer discriminated against in favor of negro teachers.

 It having been made to appear upon the trial of this case (Appendix, p. 16) that in Savannah "The mean yearly salary of Negro teachers markedly exceeded that of the white teachers," and that "Negro principals assigned relatively lower competence ratings to the Negro teachers under their supervision than the white principals assigned to the white teachers under their supervision";

It is further ordered that the plan shall provide that discrimination in favor of Negro teachers and against white teachers shall be terminated.

It is further ordered that the defendant School Board shall continue to collect and shall give effect to test results so that race and color as such shall play no part in the assignment of school children or teachers and so that classifications according to age and mental qualifications may be made intelligently, fairly and justly.

Ordered further that all objections inconsistent herewith are overruled.